## A94A2666. GREGG v. THE STATE.
(453 SE2d 499)

BIRDSONG, Presiding Judge.

Appellant James R. Gregg was convicted of DUI (Count I), driving a motor vehicle with an unlawful blood-alcohol level (Count II), and driving without proof and evidence of minimum insurance coverage (Count III); Count I was merged into Count II by the trial court following appellant's conviction. Appellant appeals the denial of his motion for new trial and in effect the judgment of conviction. His sole enumeration is that the trial court erred in allowing the State to introduce evidence of a blood test result during rebuttal. *Held*:

Following his arrest for DUI and no proof of insurance, appellant was taken to the police station and was tested on the Intoximeter 3000; the test result was .17. Appellant requested an independent test of his blood. During the course of the independent testing, the arresting officer ordered and obtained a sample of appellant's blood. The officer testified that it was his own custom always to obtain a control sample of the blood drawn during independent testing so that the State crime lab could test it "to insure that the differences in the test results would not be so grossly different." This procedure is conducted to obtain "a control sample, not to be introduced as evidence against [a suspect] as to the results of it, *initially.*" (Emphasis supplied.) The crime lab report revealed that the control sample showed appellant's blood-alcohol concentration level at .17. During a hearing on appellant's motion in limine or to suppress, the trial court ruled that if the State intended to introduce this evidence it must first give the court ten days notice prior to trial and provide a brief, and that opposing party also would be given an opportunity to brief the issue. The State did not provide such notice prior to trial, and

evidence of the test result of the sample was not admitted during the State's case-in-chief. Appellant introduced expert testimony contesting the accuracy of the results of the State's Intoximeter 3000 test and asserting that the .17 reading on the Intoximeter 3000 "very well could have" been caused by appellant's earlier exposure to methyl ethyl ketone. Thereafter, the State requested that it be allowed to introduce the results of the State's test of the control sample taken from the blood drawn from appellant. The trial court ruled that the State could introduce the test results in rebuttal.

"[W]hether the State should be permitted to introduce evidence after the defendant has closed his testimony, *even if it was not strictly in rebuttal,* is a matter resting in the sound discretion of the court." (Emphasis supplied; punctuation omitted.) *Smith v. State,* 260 Ga. 746, 748 (1) (399 SE2d 66). "Under the facts of this case, 'the trial court did not abuse its discretion in controlling the scope of rebuttal testimony.'" Id.; see *Chezem v. State,* 199 Ga. App. 869, 872 (3) (406 SE2d 522). The ruling of the trial court to allow the blood test to be admitted in rebuttal is entirely consistent with the statutorily recognized object of the rules of evidence, which is "the discovery of truth." OCGA § 24-1-2.

Appellant asserts that the introduction of the evidence was tantamount to a violation of the requirements of former OCGA § 17-7-211 (b), see generally OCGA § 17-16-1 et seq.; however, as appellant made no timely objection at trial to the admission of the evidence on the specific grounds of former OCGA § 17-7-211, this issue is not preserved on appeal. *Norman v. State,* 197 Ga. App. 333, 334 (2) (398 SE2d 395); *Ray v. State,* 187 Ga. App. 451, 452 (370 SE2d 629). Further the State, in response to appellant's pretrial motions for discovery, inspection, and production of evidence, filed disclosure in February 1993. The record shows, without contradiction, that the disclosure included the State's intoximeter test report and the blood test report at issue. Additionally, in appellant's motion in limine filed on October 5, 1993, appellant revealed its awareness "that the State will seek to introduce evidence of alcohol concentration which was the result of a state administered chemical test."

Appellant contends the "trial court" should be estopped from allowing the evidence to be offered in rebuttal, as the defense had been led to rely upon the prior ruling of the trial court regarding the ten-day notice and brief requirement imposed upon the State. Assuming a proper situation ever could estop a trial court from exercising its judicial discretion as to the admission of rebuttal evidence, this is not such a case. Appellant was aware that the State possessed this evidence, and should not have expected in effect evidentiary immunity to attack the accuracy of the Intoximeter 3000 result free from the State's subsequent introduction of rebuttal-type evidence. The trial

court had discretion to allow relevant evidence in rebuttal even as-suming it technically tended to bolster the State's intoximeter test result more than to impeach directly defense evidence attacking in-toximeter test result credibility. In searching for the truth (OCGA § 24-1-2), evidence should be admitted if it is admissible for any legit-imate purpose (*Krebsbach v. State*, 209 Ga. App. 474 (1) (433 SE2d 649)); appellant has failed to establish affirmatively by the record that the trial court abused its discretion in admitting the evidence during rebuttal. See *Smith*, supra.

Appellant contends in support of his claim of lack of foundation that the blood test was not a State-administered test and that the arresting officer did not know who paid for it. Who pays for the blood test does not affect admissibility. The evidence is uncontradicted that the State had the blood sample analyzed by the State crime lab; thus, the blood test itself was State-administered, although the drawing of the blood may have been done at an independent medical facility. Appellant also contends that the officer admitted the blood test was not taken for evidentiary purposes; this is incorrect, the officer merely admitted the blood sample was taken primarily as a control sample and was not taken for purposes of being "initially" introduced in evi-dence against appellant. Appellant asserts that the blood sample was not taken pursuant to OCGA § 40-6-392. OCGA § 40-6-392 (a) (3) and (4) provides on its face that a law enforcement officer can request the person to submit to more than one chemical test. Nothing in this stat-ute prohibits a police officer from taking a portion of the blood legiti-mately drawn during an independent test requested by the person whose blood was drawn, and sending the sample to the crime lab for subsequent testing, either for control purposes or for potential rebut-tal evidence, or both. In this regard, OCGA § 40-6-392 (a) broadly provides that "[u]pon the trial of any civil or criminal action or pro-ceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391, *evidence* of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath, or other bodily substance *shall be admissible*." (Emphasis supplied.) To obtain a reversal of his convic-tion, an appellant must show both error and harm; appellant has not carried his burden. *Robinson v. State*, 212 Ga. App. 613, 616 (2) (442 SE2d 901).

Additionally, the blood test evidence was admissible not only to bolster directly the State's intoximeter test result but also to under-mine the credibility of any inference favorable to the defense that might have been drawn from the testimony of the defense expert that the intoximeter results could have been adversely affected by appel-lant's exposure to methyl ethyl ketone; accordingly, the blood test ev-

idence was not rendered inadmissible due to lack of foundation. See *Cartin v. Boles*, 155 Ga. App. 248, 256 (7) (270 SE2d 799).

Each of appellant's contentions in support of this enumeration of error is without merit.

*Judgment affirmed. Blackburn, J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED JANUARY 6, 1995 —
RECONSIDERATION DENIED JANUARY 24, 1995.

*Spruell & Dubuc, Billy L. Spruell, Melinda D. Taylor*, for appellant.

*Ben F. Smith, Jr., Solicitor, Mark A. Basurto, Barry I. Morgan, Assistant Solicitors*, for appellee.