## S00A0106. CAMPHOR v. THE STATE.
(529 SE2d 121)

THOMPSON, Justice.

Zhukov Camphor was convicted by a jury of malice murder, felony murder, burglary and aggravated stalking in connection with the shooting death of his former wife's boyfriend, Tony Leslie. He appeals from the denial of his motion for new trial.[1] Finding no error, we

---

[1] The crimes were committed on July 21, 1997. An indictment was filed on February 5, 1998, charging Camphor with malice murder, felony murder, burglary, and aggravated stalking. Trial commenced on April 13, 1998, and on April 20, 1998, Camphor was found guilty of all counts. He was sentenced on the same day to life imprisonment for malice murder and to concurrent prison terms of 20 years for burglary and five years for aggravated stalking. A motion for new trial was filed on May 12, 1998 and amended on January 26, 1999, February 17, 1999, April 26, 1999, and May 3, 1999. The motion for new trial as amended was denied on September 1, 1999. A timely notice of appeal was filed and the case

affirm.

On the night of the shooting, Camphor appeared at the home of his ex-wife, Valecia Henderson, in violation of a court order which had been issued one month earlier prohibiting his presence there. He observed a pick-up truck bearing the personal license plate "Tony L." parked in the driveway next to Henderson's vehicle. Armed with a loaded pistol in his waistband, Camphor entered the house asking for Tony. Although Henderson reminded Camphor that he had been ordered to stay away from her residence and repeatedly demanded that he leave, he ignored her and walked through the house in search of the victim. Henderson followed Camphor to her bedroom where Tony Leslie was repairing a VCR. She watched as Camphor drew his pistol and shot and killed the unarmed victim.

Camphor's five children were also in the home at the time. On previous occasions, they had heard their father threaten to shoot Leslie "between the eyes" because of concerns that he would take his place in the family. Upon leaving the Henderson residence, Camphor reminded his daughter, "I told you I was going to do it." He surrendered to authorities two days later.

Forensic evidence established that three bullets had entered Leslie's body through the head, chest, and back. The medical examiner opined that the first bullet was fired into the victim's back.

Camphor testified at trial that he shot Leslie but did so in self-defense because he thought Leslie was about to shoot him. The defense presented expert testimony that at the time of the shooting Camphor was in need of dialysis and he suffered from post traumatic stress disorder, which caused the impaired perception that he was acting in self-defense.

1. The evidence was sufficient for a rational trier of fact to have found Camphor guilty beyond a reasonable doubt of the offenses for which he was convicted, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Bond issues

2. In a prior proceeding, Camphor was arrested on a warrant brought by Henderson for criminal damage to property after he spray painted her car. He appeared pro se at a bond hearing in that matter and was released on a signature bond pending a preliminary hearing. The preliminary hearing took place in June 1997, one month prior to Leslie's death. Camphor again appeared without counsel at that proceeding, where he was ordered as a condition of his bond to stay away

---

was docketed in this Court on October 1, 1999. Oral argument was heard on January 24, 2000.

from his ex-wife and her residence. The aggravated stalking charge in the present indictment is predicated on a violation of that condition of the bond. See OCGA § 16-5-91.[2]

Camphor attempts in this proceeding to challenge the validity of the "stay away" condition of the June 1997 bond on several bases. Pretermitting whether the issuance of the pretrial bond may be challenged in a separate proceeding after the time for appeal has expired, we find no error.[3]

(a) During the 1997 bond hearing the court carefully advised Camphor of his right to a preliminary hearing and his right to counsel; that he could have a preliminary hearing on that date or have the case reset to give him the opportunity to retain counsel; and that a public defender could be appointed to represent him at the preliminary hearing if he could not afford to hire counsel. Camphor executed a written waiver of counsel; however, the preliminary hearing was continued at the State's request. When Camphor appeared on the date scheduled for the preliminary hearing, the court noted that he was without counsel. The court again advised Camphor of the nature of the proceeding and offered him the option to proceed pro se or forego the hearing. Camphor opted to go forward without counsel. Under the circumstances, we reject the assertion that his waiver of counsel was not knowingly and intelligently made. See generally *Wayne v. State*, 269 Ga. 36 (2) (495 SE2d 34) (1998).

(b) Relying on *Hood v. Carsten*, 267 Ga. 579 (481 SE2d 525) (1997), Camphor claims his due process rights were violated when the court modified the pretrial bond to include the stay away provision without prior notice. In *Hood* we held that minimal due process is required prior to the *revocation* of bond "[b]ecause a bond revocation involves the deprivation of one's liberty." Id. at 581. Unlike *Hood*, Camphor was not deprived of his freedom and he had an opportunity to be heard before his bond was modified. The court merely imposed a reasonable restriction as a condition of pretrial release.

"When a defendant is charged with a violent crime against a specific victim, it is within the trial court's inherent powers to require that the defendant avoid any contact with the victim as a condition of remaining free pending trial." *Clarke v. State*, 228 Ga. App. 219, 220 (1) (491 SE2d 450) (1997). The condition imposed in this case was appropriate and reasonable under the facts and did not constitute an

---

[2] That Code section at (a) provides inter alia: "A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release . . . contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

[3] There is no indication that Camphor timely challenged the court's authority to impose conditions on his 1997 bond.

abuse of the court's discretion.

## Severance

3. Camphor contends that the trial court erred in denying his motion to sever the aggravated stalking charge from the other indicted offenses for purposes of trial. He submits that severance was required because the evidence offered to convict him of aggravated stalking was "wholly unrelated" to the remaining counts of the indictment and was unduly prejudicial. We disagree.

Where two or more offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single plan or scheme, severance is discretionary with the court. *Gober v. State*, 247 Ga. 652, 653 (1) (278 SE2d 386) (1981). The act of aggravated stalking formed part of a single continuing plan to gain unlawful entrance to the Henderson home, culminating in the death of Tony Leslie. Thus, the evidence used to convict Camphor of aggravated stalking was inextricably bound to the essential elements of the burglary charge as well as intent and bent of mind for the murder charges. *Watson v. State*, 176 Ga. App. 610 (2) (337 SE2d 54) (1985).

Taking into consideration the number of offenses charged and the complexity of the evidence to be offered, we conclude that the trier of fact was able to distinguish the evidence and apply the law intelligently as to each offense. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975). Accordingly, the trial court did not abuse its discretion in refusing to sever the aggravated stalking charge. Id.

## Evidence of prior difficulties

4. The trial court did not err in admitting evidence of prior difficulties between Camphor and the victim without pretrial notification to the defense.

> Prior difficulties are not subject to the notice requirements of USCR 31. *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998). The mere fact that *Wall* had not been decided at the time of [Camphor's] trial is of no consequence. See *Smith v. State*, 270 Ga. 123, 124 (2) (508 SE2d 173) (1998) (applying *Wall* retroactively).

*Laney v. State*, 271 Ga. 194 (4) (515 SE2d 610) (1999).

Nor does the retroactive application of the ruling in *Wall* violate ex post facto constitutional requirements. In *Love v. State*, 271 Ga. 398, 399 (1) (517 SE2d 53) (1999), we determined that a statute which does "nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under

the rules of evidence as enforced by judicial decisions at the time the offense was committed," did not violate ex post facto requirements. Likewise, our ruling in *Wall* merely allowed for the admissibility of prior difficulty evidence without the requisite pretrial notice. Accordingly, we find no ex post facto violation. *Love*, supra.

### Assistance of trial counsel

5. Camphor contends that he was denied effective assistance of trial counsel in several respects. To prevail on this claim, Camphor must establish that counsel's performance was deficient and but for that deficiency, there is a reasonable likelihood that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id., 466 U. S. at 690.

(a) It is asserted that trial counsel should have objected to admission of the stay away order and resultant evidence. Counsel testified at the hearing on the motion for new trial that he did not object because he did not believe that the stay away order was erroneous. In light of our determination that the evidence was properly admitted, any such objection would have been fruitless.

(b) Nor was counsel ineffective in failing to interview and call as a witness Officer Mitchell who was among the first investigators on the scene. It had been noted in Officer Mitchell's report that Henderson stated she was in the laundry room when Camphor entered the house and asked the victim's whereabouts. Camphor asserts that this information would have discredited Henderson's testimony at trial that she followed him to the bedroom and observed the shooting.

Trial counsel explained that he made the tactical decision not to call Officer Mitchell because he feared that Mitchell might clarify his report in a way that would harm Camphor's defense, and because the information came in through the children who testified that their mother was not in a position to have witnessed the shooting. "When founded on legitimate evidentiary concerns, such decisions do not constitute ineffective assistance of counsel." *DeYoung v. State*, 268 Ga. 780, 786 (5) (493 SE2d 157) (1997).

(c) Camphor submits that counsel was ineffective in failing to object to evidence of prior difficulties between himself and his former wife. Trial counsel explained that he filed pretrial motions in limine to prevent the introduction of this evidence, but without success. And while he objected to the evidence at certain times during trial, he opted not to object at every possible moment. We view this as a reasonable tactical decision, well within the acceptable norms of effec-

tive assistance. Id.

We conclude that none of the enumerated actions or omissions by counsel constitute ineffective assistance of counsel. Since the trial court's ruling is not clearly erroneous it will not be set aside. *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

*Jury instructions*

6. Camphor challenges several aspects of the jury charge.

(a) It is asserted that the trial court erred in failing to instruct the jury sua sponte concerning an alleged act of violence by the victim against the defendant, as such bears on the sole defense of justification. Camphor specifically refers to a confrontation in the driveway of Henderson's home several months prior to the shooting. Both Henderson and her son who witnessed the incident testified that she and Leslie were seated in a van in the driveway of her home; that Camphor approached the vehicle, accused Leslie of having a relationship with "his wife" and threatened to kill him; that Leslie tried to avoid a confrontation by moving to the opposite side of the vehicle, and that Camphor struck the window with his fist in anger as Henderson drove off. Camphor testified that Leslie drove the vehicle in his direction and that he hit the window to avoid being struck.

There was no duty in this instance to instruct the jury on prior violent acts by the victim. First, the court gave a complete instruction on justification and all other theories applicable to the evidence. Therefore, there was no error under *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991), which requires that a defendant's sole defense must be charged even when not requested. Furthermore, because the evidence was in dispute as to who was the aggressor, credibility was to be evaluated by the jury. Thus, such a charge, even if requested, could be construed as an improper comment by the court "as to what has or has not been proved." *Jones v. State*, 250 Ga. 498, 499 (4) (299 SE2d 549) (1983).

(b) Likewise, the trial judge did not err in failing to give an unrequested instruction that a defendant's prior consistent statements could be considered as substantive evidence of his innocence. Camphor refers to statements he gave to two psychotherapists following the shooting, which were consistent with his trial testimony that he perceived the victim to be armed and that he acted to defend himself.[4]

Assuming, but not deciding that such a charge was authorized, see generally *Woodard v. State*, 269 Ga. 317 (2) (496 SE2d 896)

---

[4] The two experts testified for the defense and were examined concerning Camphor's disclosures to them.

(1998), a criminal defendant is ordinarily required to present written requests for any desired jury instructions. OCGA § 5-5-24 (b). He is relieved of this duty only "where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. [Cit.]" (Punctuation omitted.) *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995). The manner in which the jury should consider testimony of witnesses is a collateral matter, *Freeman v. State*, 268 Ga. 185 (4) (486 SE2d 348) (1997), and omission of the unrequested charge was not clearly harmful as a matter of law. Moreover, the substance of the instruction was adequately covered in the charge given. See *Williamson v. State*, 186 Ga. App. 589 (3) (367 SE2d 863) (1988).

(c) Referring to the deceased as the "victim" in the charge on aggravated assault did not amount to an improper expression of guilt of the accused under OCGA § 17-8-57. That statute is violated only "when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." *Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986).

(d) Camphor asserts that the court erred in its charge on burglary and criminal trespass by requiring the jury to unanimously agree on the greater offense before considering the lesser included offense.

The record reveals that the jury was charged on the elements of burglary, and then instructed:

> If you find beyond a reasonable doubt that this defendant did . . . commit the crime of burglary . . . then you would be authorized to find the defendant guilty. . . . If you have a reasonable doubt that the defendant committed the offense of burglary . . . it would be your duty to give him the benefit of the doubt and find him not guilty. . . . Should you find the defendant not guilty of the crime of burglary, you would be authorized to consider under the evidence whether or not he did, at said time and place, commit the lesser offense of criminal trespass.

The court then charged the elements of criminal trespass.

In *Cantrell v. State*, 266 Ga. 700 (469 SE2d 660) (1996), a jury announced that it could not agree unanimously on the indicted offense but had reached a verdict of guilty of the unindicted lesser offense. We applied the rule that a guilty verdict on a lesser included offense operates as an acquittal of the greater offense precluding further deliberations, and held that it was error for the trial court to reject the verdict and to require the jury to continue deliberations on the greater offense. Id.

Relying on *Cantrell*, the court in *Kunselman v. State*, 232 Ga. App. 323, 324 (1) (501 SE2d 834) (1998), found reversible error where the court instructed the jury that "if you find the defendant not guilty of burglary, you would *then and only then* be authorized to consider the lesser included offense of criminal trespass." (Emphasis supplied.) The charge was erroneous under *Cantrell* because a jury following these instructions would be required to render a unanimous verdict on the burglary charge before considering the criminal trespass charge. While the charge in the present case deviates from the Suggested Pattern Instructions which we deem preferable,[5] it does not compel the jury to reach a unanimous verdict on the greater offense before it may consider the lesser offense. Thus, it is not faulty under *Cantrell* or *Kunselman*.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 1, 2000 —
RECONSIDERATION DENIED MAY 30, 2000.

*Brian Steel*, for appellant.

*J. Tom Morgan III, District Attorney, Robert M. Coker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.

---

[5] The pattern charge on lesser included offenses states: "If you do not believe beyond a reasonable doubt that the defendant is guilty of (indicted crime), but do believe beyond a reasonable doubt that the defendant is guilty of _____, then you would be authorized to find the defendant guilty of _____." Suggested Pattern Jury Instructions, Vol. II, Criminal Cases, p. 15 (2nd ed. 1991).